IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG DIVISION

UNITED STATES OF AMERICA,

    v.                                          Criminal No. 3:20-MJ-127

TIMOTHY JOHN WATSON,

    Defendant.

**DEFENDANT TIMOTHY WATSON'S MOTION FOR PRE-TRIAL RELEASE**

COMES NOW Defendant Timothy Watson, by undersigned counsel, respectfully moving this Honorable Court for an order releasing him pending trial. In support of this motion, Mr. Watson states as follows:

I.      INTRODUCTION

Mr. Watson was arrested for firearm violations where the Government alleges that he was selling portable wall hangers that were actually parts that could be used to convert a firearm into a machine gun. The Government has moved for detention of Mr. Watson, arguing that there is a serious risk that Defendant will flee, a serious risk of obstruction of justice and that there are no conditions of release which will reasonably assure Defendant's appearance as required and the safety of any other person and the community.

Mr. Watson avers that there is not a serious risk that he will flee, there is not a serious risk that he will obstruct justice and that conditions of release will reasonably assure his appearance as required and the safety of any other person and the community. Mr. Watson suggests that the evidence will show that he is not the person that the Government is trying to

1

portray him as-- a violent extremist.  He is actually a compassionate young man who cares about his family and helping others and does not believe in or advocate for violence.

To reasonably ensure his appearance as required and the safety of any other person and the community, Mr. Watson would agree to any and all reasonable conditions of release, including but not limited to: 1) supervision by the probation department, 2) no access to any firearms or firearm accessories, 3) no internet or smart phone access, 4) home incarceration with GPS monitoring, 5) his parents having third party custodian status, and 6) family property being put up as collateral for his compliance.  With these conditions, Mr. Watson suggests that this Court can be reasonably assured of his appearance and the safety of any other person and the community.

II.     MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE PRETRIAL RELEASE OF MR. WATSON

Mr. Waston avers that, pursuant to 18 U.S.C. § 3142(e), this Court should find that conditions of release or a combination of conditions will reasonably assure the appearance of Mr. Watson and the safety of any other person or the community.

18 U.S.C. § 3142(e)(1) provides:

> If, after a hearing pursuant to the provisions of subsection (f), the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial.

18 U.S.C. § 3142[c](B) provides a non-exhaustive list of conditions, "subject to the least restrictive further condition, or combination of conditions" that will "reasonably assure the appearance of the person as required and the safety of any other person and the community," including:

> 1) that the person remain in the custody of a designated person,

2) that the person maintain employment,
3) that the person abide by specified conditions on personal associations, place of abode, or travel,
4) that the person report on a regular basis to a designated law enforcement agency,
5) that the person comply with a specified curfew,
6) that the person refrain from possessing a firearm,
7) that the person refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance, without a prescription by a licensed medical practitioner,
8) that the person undergo available medical, psychological, psychiatric, or drug treatment,
9) that the person execute an agreement to forfeit property for failing to appear,
10) that the person execute a bail bond,
11) that the person return to custody for specified hours.

18 U.S.C. § 3142[c](B).

Pursuant to 18 U.S.C. § 3142(g), to determine "whether there are conditions of release that will reasonably assure the appearance of the person as required," the Court should take into account the following factors:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offenses under Federal, State, or local law;

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in [c](1)(B)(xi) or [c](1)(B)(xii) of this section, the judicial officer may upon own motion or

motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

    A.    <u>The Nature and Circumstances of the Offenses Charged Militate Against the Pre-Trial Detention of Mr. Watson</u>

While this case does involve what the Government contends should be defined as a firearm, there is no evidence that Mr. Watson has ever engaged in acts of violence nor advocated that others engage in acts of violence.

The allegations are that Mr. Watson operated a public website that sold portable wall hangers that could be converted into a part that would make a semi-automatic firearm a machine gun. As argued below, the first issue, which goes to the weight of the evidence, is whether such a part could really be used in such a way or whether such part would require significant modification if a person was to decide to create a part that would actually accomplish the goal of making a firearm into a machine gun.

Moreover, though, the evidence in this case, as proffered in the criminal complaint, shows that Mr. Watson conducted the business openly-- he registered his business, with his name, his address, and his phone number, with the West Virginia Secretary of State and used his name, his address, and his phone number when registering all of the accounts associated with the business- the Paypal account, the Stamps.com account, and the web host account. If Mr. Watson's actual purpose was to get illegal weapons into the hands of extremists, he wouldn't have made this information easily discoverable. He would have simply taken his business to the dark web, which would make it much harder for anyone to track it.

Furthermore, while the Government relies upon the evidence that it appears that Steve Carillo, an extremist who ended up shooting and killing officers, had purchased a portable wall hanger, there is no evidence that the portable wall hanger was used in the shooting or in a weapon by Steve Carillo. Nor is there any evidence that Mr. Watson had any communications with Steve Carillo, other than the purchase of the portable wall hanger.

Mr. Watson will not deny that he is a staunch supporter of Second Amendment rights, that he grew up with firearms, and had a history of making items out of gun parts/look-alike parts, even prior to the advent of the portable wall hanger. However, he does not belong to any so-called Boogaloo movement and would reject any ideology that is based upon violence.

And most importantly, though he has a libertarian political bent, more important to Mr. Watson is his family, his friends, and his girlfriend and he recognizes that while what he was doing may have been operating in the gray area of the law, his loved ones are much more important to him than his political identity and his actions, whatever the ultimate outcome of this case may be, has irreparably hurt the ones that he loves.

  B. <u>The Weight of the Evidence Against Mr. Watson Militates Against his Pre-Trial Detention</u>

This is not a case about the Boogaloo movement. Nor is it a case where Mr. Watson will be arguing that he was not the proprietor in charge of portablewallhangers.com. Rather, the Government's case and Mr. Watson's defense relies solely on a question of statutory interpretation-- whether the portable wall hangers sold by Mr. Watson meet the definition of a "machine gun" as defined by 26 U.S.C. § 5845(b). In other words, the question is whether the portable wall hangers sold by Mr. Watson are "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a

machine gun." The Government contends that the hook portion of the portable wall hanger, when removed from the base, is an "auto seer," which fits the definition of a machine gun.

However, there are two problems with the Government's theory. First, the portable wall hanger functions as a hanger. It can and has been used as a home storage device. As such, it does not meet the definition of being "intended solely and exclusively" for use in converting a weapon into a machine gun. It's not dissimilar to how stores selling bongs and pipes that could be used for smoking marijuana were legally sold and advertised for smoking tobacco. At best, the Government can make a case that the portable wall hanger serves a dual purpose and as such does not fit the specific statutory language under Section 5845(b).

While that legal loophole does provide a defense, there is another layer to this case that was conveniently elided in the criminal complaint affidavit, but can be seen if you read in between the lines. While the hook portion of the portable wall hanger may resemble an auto sear, it was specifically designed not to function as an auto sear. The only way that it would be able to become an auto sear would have been by know-how and significant modification by the purchaser. As sold, even if the hook portion is removed from the base, it would not function as an auto sear. Importantly, Mr. Watson never instructed any purchaser on what dimensions the hook would be required to be modified to in order to function as an auto sear.

In this way, what Mr. Watson did is no different than if he sold metal clothes hangers. With a few modifications and bends, a metal clothes hanger-- the kind you get at a cleaners-- can be converted into an auto sear. The directions to do this are as easy as a google search away. Certainly, selling metal clothes hangers, even if they were advertised to hold one's hawaiian shirts, would not be considered transfer of a machine gun. Nor should the selling of the portable wall hangers in this case.

As such, Mr. Watson suggests that there is a colorable legal defense in this case. Ultimately, that issue will need to be decided by the District Court and a jury. However, it certainly suggests that the actions that Mr. Watson was alleged to have engaged in are in a gray area in the law, and with the presumption of innocence, this gray area should militate against pre-trial detention.

> C. The History and Characteristics of Mr. Watson Militate Against his Pre-Trial Detention

Timothy Watson is not the violent extremist that the Government is attempting to portray him as. While he is a libertarian and believes strongly in the Constitution, including the Second Amendment, he is not currently and has never been an adherent to the so-called Boogaloo movement. In fact, important to Tim's political self-identity is the non-aggression principle-- he does not believe in causing harm to anyone-- no matter their race, their gender, their nationality, or their political identity.

Importantly, nor is Tim solely defined by his libertarian political identity. He is a humble and kind individual who counts his family and loved ones as the most important thing in his life.

> 1. *Mr. Watson's Family and Community Ties Demonstrate that Conditions of Release Would Reasonable Assure His Appearance*

Tim was born on January 13, 1990 in Prince George's County, Maryland to John and Tammie Watson. The family, along with Tim's younger brother, Michael, moved to Myersville, Maryland in 1996. John and Tammie wanted to raise their sons in a more rural environment. According to his father, John Watson, "At a very young age, Tim loved music, the outdoors, inventing, and creating his own toys, and helping other people when he saw they were in need." *See* Attachment 1, Character Letters, Letter of John Joseph Watson.

Tim took to the small town of Myersville and became well known in the community where "[h]e forged relationships with a number of older neighbors, and would help them with just about anything they were in need of." *Id*.

As he got older, he was also well known in the community for his guitar playing. John Watson states, "At the age of nine, he started teaching himself to play guitar. As he got older, he frequently went to the local Ruritan park to play his acoustic guitar for anyone who wanted to listen and would draw crowds of kids and their parents." *Id*. Kamren Morgan, a lifelong friend of Tim's, writes that he "remember[s] that black guitar that he used to carry around everywhere, that's how you knew it was [Tim]." *See* Attachment 1, Character Letters, Letter of Kamren Morgan. Tim's uncle and aunt-- Albert and Deborah Freburger-- mention that when they think of Tim, they think of the talented musician and artist that he is. *See* Attachment 1, Character Letters, Letters of Albert and Deborah Freburger. His aunt writes, "Tim appreciates nature… he vacations in it, photographs it, and plays his guitar there. He is the basic example of an easygoing young man." *Id*.

As John Watson describes, "[Tim] is very close with his entire family, keeping in touch with all of us on a regular basis and making the time to drive the hour and a half trip to come see my wife and I, as well as his grandma at least two to three times a month." *See* Attachment 1, Character Letters, Letter of John Joseph Watson. Tim's grandmother writes, "I know that I can count on [Tim] when I need him with the miles between us. My grandson calls to check on me and listens to my jokes. He is a good, reliable boy." *See* Attachment 1, Character Letters, Letter from Beverly Waston. Deborah Freburger writes that Tim "is always respectful, is a loving and participating family member and faithful to his Emily." *See* Attachment 1, Character Letters, Letter from Deborah Freburger.

Tim's now-retired high school guidance counselor writes of Tim's intelligence, despite dropping out of high school in senior year. "Tim is an intelligent young man that did not respond to the typical high school program. He had no problem passing the GED." *See* Attachment 1, Character Letters, Letter from Peggy Throne. Tim went to work after high school, and although he has no additional formal education, he has always been interested in educating himself-- whether it be American history, computer programming, or physics.

During high school and following high school, Tim had a variety of jobs. He worked at a golf course, worked at Fitzgerald Auto Mall, was employed by Spirent Communications, and then worked at the Knights Inn until he was laid off due to the pandemic. John Watson writes that Tim "has always been a hardworking, honest and loving young man." *See* Attachment 1, Character Letters, Letter from John Watson. D. Seth Dawson, Service Director at Fitzgerald Auto Malls, writes of Tim's employment under him:

> I always found Tim to be extremely courteous and professional while engaging with the public. He would go out of his way to create a positive guest experience. I remember many times when he would assist the elderly to transport their personal belongings from their loaner vehicles to their personal vehicles. He truly provided a genuine care that was felt by anyone he interacted with."

*See* Attachment 1, Character Letters, Letter from D. Seth Dawson.

Kurt Sliter, who met Tim at Fitzgerald Auto Mall and then remained close to him after he left, writes that Tim excelled while working there and through "Tim's hard work and positive attitude propelled him to the position of service lane manager and then service writer." *See* Attachment 1, Character Letters, Letter from Kurt Sliter.

While Tim's father recognizes that Tim did not take the normal path through life, he has indicated that he is extremely proud of his son for the man that he is. "My son is a caring and considerate man and has always looked for the bright side of any situation. Tim truly loves life

and has a great deal of respect for it.  His moral character wouldn't allow him to cause harm to anyone because in his mind, every life is important." *See* Attachment 1, Character Letters, Letter of John Watson.

As Kamren Morgan summarizes about Mr. Watson's family and community ties, "The Watson family are one of a kind and Tim surely is loved by so many people in our community." *See* Attachment 1, Character Letters, Letter of Kamren Morgan.

>    2.   *Mr. Watson's Character, Physical and Mental Condition, and Past Conduct Demonstrate that Conditions of Release Would Reasonably Assure His Appearance and the Safety of the Community*

Further, a multitude of witnesses, including family members, community members, and friends, have vouched for Mr. Watson's character for compassion, responsibility, honesty, trustworthiness, and non-dangerousness.

In reading the letters from Mr. Watson's friends and family and in undersigned counsel's meeting with friends and family, the things that come up most about Mr. Watson are his creativity and his compassion.

Tim's high school guidance counselor writes, "I believe Tim is a good, caring person that I have much confidence in… Tim is a former student that I always remember as a person of good heart and capable of contributing positively to society." *See* Attachment 1, Character Letters, Letter from Peggy Throne.

Kurt Sliter writes about Tim's many positive attributes:

> Tim is a great kid with tremendous creative ability and talent. He is a fast learner and successful in whatever he applies himself at. It is rare in today's world to see a kid his age with such great manners, politeness, and work ethic. He is a people person, and very outgoing, always ready to lend a hand. At no point over the years did I ever see Tim as a dangerous individual or hear anything that would give me pause.

*See* Attachment 1, Character Letters, Letter of Kurt Sliter.

Carrie Manner writes, "During the entire time that I have known Tim I have witnessed an individual who always puts others before himself." *See* Attachment 1, Character Letters, Letter of Carrie Manner. Time and time again, those who know Tim best suggest that he would not even hurt an insect, never mind another human being.

Tim's compassion can best be exemplified in his empathetic actions in trying to help those around him that struggled with and continue to struggle with addiction. Tim saw first hand the ravages of the opioid epidemic in this country and has tried helping his family and friends in dealing with the fall out and trying to recover. As Mr. Watson's grandmother puts it, she has "three grandsons. One is in heaven, one in recovery, and one has managed to carve a stable place for himself in this world. That would be our Tim." *See* Attachment 1, Character Letters, Letter from Beverly Watson. Tim saw his cousin die from opioid addiction, has seen his younger brother's struggle with addiction and recovery, and has seen more than a handful of friends succumb to their addiction, and as a result is "always looking for a way to help people with their struggles." *See* Attachment 1, Character Letters, Letter from John Watson. Often, Tim would be found being the "voice of reason" and trying to counsel others regarding their drug addictions, helping to stage interventions or otherwise support his friends and family in their recovery. *Id.* Deborah Freburger, who lost her son-- Tim's cousin-- to the opioid epidemic writes that Tim often tried to provide counsel for his cousin and after he died, Tim wrote a song for the memorial service to attempt to comfort his grieving family.

Those that know Tim best further vouch for his trustworthiness. *See* Attachment 1, Letters of Albert Freburger, Carrie Manner, Beverly Waston, Deborah Freburger. As discussed below, his family has so much faith in Tim's trustworthiness that they are willing to put up their home as collateral. *See infra* Section II(C)(4). As Tim's father summarizes, "I am confident that

he would respect any conditions set for release on bail, because he is a man of his word, and through the years has earned my trust in that." *See* Attachment 1, Character Letters, Letter of John Watson.

### 3. Mr. Watson's Criminal History and Record Concerning Appearance at Court Proceedings

Mr. Watson's lack of any serious criminal history also supports his release pending trial. The only criminal history that undersigned counsel is aware of was an arrest in Maryland for having a handgun in his vehicle on April 15, 2018. He was given a probation before judgement for the offense and successfully completed one year of unsupervised probation, resulting in a dismissal of the charge. Moreover, in that case, Mr. Watson was released on a personal recognizance bond, did not violate any condition of his bond, and always appeared as required. Thus, Mr. Watson's paucity of a criminal record combined with his compliance with bond during his one previous issue supports a finding that Mr. Watson should be released pending trial in the instant case.

### 4. Mr. Watson's Financial Resources

While Mr. Watson avers that he will follow all of the conditions of pre-trial release and will faithfully appear when required, Mr. Watson also does not have any financial resources that would enable him to flee. At the time of his arrest, Mr. Watson was not employed due to being laid off by the Knights Inn due to the COVID-19 pandemic. His only source of income were his arts and crafts, including the portable wall hangers that are at issue in this case. Mr. Watson did not profit much from this pursuit and currently lacks any financial resources of his own. Based on his lack of financial resources, Mr. Watson is not a threat to flee.

What Mr. Watson lacks in monetary wealth, he makes up in a wealth of family support. Because he cannot offer property of much value as surety for his compliance with conditions of

release, Mr. Watson's father and mother have offered their property as surety to ensure Mr. Watson's compliance while on release. Mr. Watson's parent's property, located in Hardy County, is valued at approximately $204,000.00. *See* Attachment 2, Justification of Surety. This property, where Mr. Watson's parents reside with his infirm grandmother, is Mr. Watson's parents' dream house that they built to live in for the rest of their lives. Mr. Watson is already heartbroken that his actions and arrest have necessitated that his parents use their retirement money to pay for his legal representation. Mr. Watson would never risk his parents losing their home by not following his conditions of release.

Thus, if the Court finds it necessary, Mr. Watson would be able to put up family property to forfeit in the event of non-compliance with the conditions of release. Such a condition reasonably ensures Mr. Watson's appearance as required and the safety of the community.

### D.   No Danger to Any Person or the Community Would Be Posed By Mr. Watson's Release

Moreover, the Government cannot prove by clear and convincing evidence that Mr. Watson's release will pose a danger to the community or to any other person. While Mr. Watson would dutifully follow all of his conditions of release and make sure that he is no longer involved in any actions that resulted in his arrest, there are a number of conditions that would reasonably assure the safety of the community or any person. If released, Mr. Watson would agree to remain on home confinement with GPS monitoring at his parents residence in Hardy County. Furthermore, he would agree as a condition of bond to not use the internet or any smart phone to connect to the internet. These conditions, along with his family putting up their home and land as collateral, would reasonably assure the safety of the community.

If this memorandum has any persuasion, undersigned counsel hopes that it offers this Court assurance that Mr. Watson is not a violent, extremist, but rather a compassionate person,

who although may have engaged in some foolhardy and dangerous actions, does not want to see harm befall anyone. One of the things most dear to Mr. Watson is his guitar and his music. One need only look at his band's website and listen to some of the lyrics to realize the person that Mr. Watson actually is. His songs do not contain any reference to violence, whatsoever, but instead reveal the compassionate person that he is. As Mr. Watson wrote on the band's webpage, in the band's mission statement,

> Effusive delivers a strong message of perseverance and equality. In a world where most things are hectic and controversial, we strive to provide the means to help our listeners sit back and enjoy the little things. We write music tailor made to help you weather the tough parts of life and to teach love towards each other.

*See* https://www.newmusicusa.org/profile/effusivemusic/. That may seem like a contradiction to the picture that the Government is trying to paint of Mr. Watson, but Mr. Watson assures the Court that is the person, not the person the Government is portraying him as, that he really is.

Nor is there some recently racidalized version of Mr. Watson that would suggest that he is now an extremist. Mr. Watson, prior to his arrest, had a small private group with several friends and his girlfriend, which was called Team Panhandle. This small group represented Mr. Watson's political ideology-- a belief in liberty and the constitution and protection of those rights. The founding tenet of that group, as thought up by Mr. Watson, was the Non-Aggression Principle, which defined violence and aggression as inherently illegitimate and forbade its members from inciting violence, acting in any violent offensive capacity, and possessing anything deemed illegal by federal and state law. *See* Attachments 3 and 4, Affidavit of Zachary Gunther and Team Panhandle's Non-Aggression Principle. That principle-- the dedication to non-violence-- is as 'extremist' as the teachings of Dr. Martin Luther King Jr.

III.     CONCLUSION

Mr. Watson avers that there are conditions of his release that will reasonably ensure his appearance as required and the safety of any other person and the community. Specifically, Mr. Watson proposes the following conditions of his release:

1. That his release be supervised by the Probation Department for the Northern District of West Virginia.

2. That Mr. Watson shall reside at his parent's home at REDACTED.

3. That no firearms or firearm accessories shall be in his parent's home.

4. That Mr. Watson shall be subject to home incarceration at his parent's home with GPS monitoring.

5. That Mr. Watson's parents shall act as third party custodians to ensure Mr. Watson's compliance with the conditions of his release.

6. That the property at REDACTED shall be put up as collateral for Mr. Watson's release and subject to forfeiture based upon any non-compliance.

7. That Mr. Watson shall not have any access to the internet or any smart phone while on release.

8. Any other reasonable condition of release that this Court may impose.

WHEREFORE Defendant respectfully moves this Honorable Court to release him pending trial by finding that conditions of release will reasonably assure the appearance of Mr. Watson and the safety of the community.

        Respectfully Submitted,

        TIMOTHY WATSON, DEFENDANT
        By Counsel

**/s/ Shawn R. McDermott**
Attorney for Defendant
WV State Bar No. 11264

15

MillsMcDermott, PLLC
1800 West King Street
Martinsburg, WV 25401
P: (304) 262-9300
F: (304) 262-9310
smcdermott@wvacriminaldefense.com

**CERTIFICATE OF SERVICE**

I, Shawn R. McDermott, do hereby certify that I have filed the foregoing Defendant's Motion for Release using the CM/ECF filing system for the Northern District of West Virginia which will provide electronic service to Assistant United States Attorney Jarod Douglas on this 16th day of November, 2020.

**/s/ Shawn R. McDermott**
Attorney for Defendant
WV State Bar No. 11264
MillsMcDermott, PLLC
1800 West King Street
Martinsburg, WV 25401
P: (304) 262-9300
F: (304) 262-9310
smcdermott@wvacriminaldefense.com