IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

UNITED STATES OF AMERICA,

v.   Criminal Action No. 3:20-CR-42
(GROH)

TIMOTHY JOHN WATSON,

Defendant.

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR RECONSIDERATION OF DETENTION ORDER**

Comes now the United States of America and William J. Powell, United States Attorney for the Northern District of West Virginia, by Jarod J. Douglas, Assistant United States Attorney for said District, and respond in opposition to the defendant's Motion for Reconsideration of Detention Order [Doc. 41], filed January 18, 2021, asking this Court to reconsider its Detention Order [Doc. 32], entered November 23, 2020.

I.   BACKGROUND

On November 17, 2020, a Federal grand jury sitting in Martinsburg returned the instant Indictment [Doc. 23], charging the defendant with the possession and transfer of machinegun conversion devices, also known as "drop in auto sears," and the possession of a firearm silencer.

On November 17, 2020, following the return of the Indictment, this Court conducted a two-and-a-half hour-long detention hearing [Doc. 27]. The Court heard testimony from the FBI case agent, who presented several photographs of items seized from the defendant on the day of his arrest and a video of an ATF examiner test-firing a semi-automatic weapon without and with the auto sear the defendant had manufactured. The Court also heard a lengthy proffer from defense

1

counsel as well as the testimony of each of the defendant's parents [Doc. 29]. The Court also heard argument from counsel, including an approximately 45-minute long argument from defense counsel.

On November 23, 2020, this Court entered the subject Detention Order [Doc. 32], directing that the defendant be detained pending trial. The Court based its decision on a finding that clear and convincing evidence had been presented that the defendant is a danger to the community and that no bond conditions could be set to ensure the safety of the community. The Court provided a thorough and detailed explanation of the note fewer than **eight** reasons in support of this decision.[1]

First, the Court found that "Defendant's business of selling and manufacturing 'portable wall hangers' caters to members of an extremist political movement referred to as 'Boogaloo,'" noting evidence that "[h]is business website encourages the use of false names and ten percent of all his business proceeds for March 2020 were donated directly to a GoFundMe page, 'Justice for Duncan Lemp,' a known martyr for the Boogaloo movement." ([Doc. 32] at ¶ 3).

Second, the Court found that "[t]hese 'portable wall hangers' are used to modify semi-automatic assault rifles into fully automatic machine guns." In this regard, the Court emphasized that "one of his clients shot and killed a federal guard [and] [a]nother of his clients believed he was supplying international terrorists with these 'portable wall hangers' when arrested by federal agents." Finally, the Court noted that "Defendant has over 800 clients in 50 states." ([Doc. 32] at ¶ 4).

---

[1] Though not directly related to the danger to the community finding, this Court also found that "[t]he weight of evidence against the defendant is strong and if convicted, he is subject to lengthy period of incarceration." ([Doc. 32] at ¶ 2).

Third, the Court found significant evidence of statements the defendant had made because he was "disgruntled with the IRS because he could not pay his taxes with cash during COVID." Specifically, the Court noted that "Special Agent McNeal testified that there were recordings on electronic devices seized during the investigation where the Defendant states, 'Those people need to [f***ing] die' and 'Before COVID-19 ends, the world might call me a crazed gun man.' The Court also noted that "Special Agent McNeal testified in relation to the IRS incident, that Defendant told his girlfriend, that he was going to 'kill 'em,' 'blow up the building,' and/or 'deface federal property.'" ([Doc. 32] at ¶ 5).

Fourth, in response to the defendant's character references, the Court stated its "concern" that "Defendant has changed over the years and his propensity for violence has escalated as is evidenced by his statements." In this regard, the Court noted that "Special Agent McNeal obtained his girlfriend's journal, where she wrote, 'What happened to the Tim I used to know and what Tim will I get today.'" Similarly, the Court noted evidence that "Defendant told his girlfriend that if anyone came to his door for arrest or search warrant [meaning law enforcement], it would not be pretty." ([Doc. 32] at ¶ 8).

Fifth, the Court emphasized that, at the time of the defendant's arrest, he "had a loaded gun, three loaded magazines with hollow point bullets, and a knife on his person." The Court also noted that a search of the defendant's residence "revealed two loaded hand guns on his nightstand, a loaded rifle beside his bed, and another rifle fitted with a silencer in his bedroom." ([Doc. 32] at ¶ 9).

Sixth, the Court found significant that, at the time of the defendant's arrest, he "asserted that he was being kidnapped and continued to assert the same in recorded phone calls to his parents

3

from the jail." ([Doc. 32] at ¶ 10).

Seventh, the Court found noteworthy that, following his arrest, the defendant "asked his parents to get in touch with his girlfriend because he needed to marry her immediately." ([Doc. 32] at ¶ 10).

Eighth, the Court found that the defendant's "actions and behaviors" were indicative of someone who "attempts to circumvent rules/laws[.]"  Therefore, the Court found that the defendant is not "a good candidate for release under terms and conditions set by this Court." ([Doc. 32] at ¶ 11).

On January 18, 2021, nearly two months following the entry of this Court's Order, the defendant filed the instant motion, asking the Court to reconsider its decision based on "new evidence."

## II.    APPLICABLE STANDARD

Title 18, United States Code, § 3142(g) provides the specific factors that are to be considered to determine whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community. Those factors are:

1. The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

2. The weight of the evidence against the person;

3. The history and characteristics of the person, including but not limited to community ties, employment, criminal history, record of court appearance or whether the person was on probation or parole at the time the current offense was committed; and

4. The seriousness of the danger to any person or the community that would be posed by the person's release.

Title 18, United States Code, § 3142(f)(2) authorizes the Court to reopen a detention hearing at any time before trial "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."

### III. ARGUMENT

The defendant presents four grounds for reconsideration, all based in a theory of "new evidence," namely: (1) a retained clinical psychologist issued a report on January 12, 2021, opining that the defendant is "a relatively low risk of violent re-offense"; (2) Emily Cross "has offered clarification of the Government's evidence and has indicated that she does not believe [the defendant] is a violent person"; (3) three friends of the defendant "can all testify that [the defendant] never acted in a violent manner in their presence and never advocated for violence or threatened violence"; and (4) "the conditions at the Eastern Regional Jail put his health and safety and risk and deny him the opportunity to fully participate and assist counsel in preparation of a defense." For the reasons outlined below, none of these bases alone, nor in combination, warrant a reconsideration of this Court's detention decision.

**A. These Items Do Not Constitute "New Evidence."**

As an initial matter, the government questions the defendant's characterization of these

items as "new evidence." As noted above, the detention hearing was held on the same day that the Indictment was returned. The defendant did not move to continue the detention hearing. The defendant did not temporarily waive the detention hearing, while reserving his right to request one once prepared. Instead, the defendant participated in a two-and-half-hour-long detention hearing, during which his retained attorney cross-examined the case agent, elicited testimony from two defense witnesses, and presented an affidavit from one of the three friends. He could have presented affidavits of the other two friends or called them as witnesses. He could have presented an affidavit from Emily Cross or called her as a witness. He could have moved to continue or temporarily waived the detention hearing so that he could prepare such a case, including the preparation of psychological report. He did not. Instead, he now seeks to have a "second bite at the apple" nearly two months after this Court rendered its decision. The defendant should not be permitted to misuse the "new evidence" clause of the Bail Reform Act in this way.

### B. The "New Evidence" Does Not Warrant Reconsideration.

The "new evidence" does not warrant reconsideration, for the reasons outlined below. Before addressing each item, in turn, the government first notes that none of the "new evidence" changes the following.

- The defendant was engaged in a business that "cater[ed] to members of an extremist political movement."
- The products of this business are "are used to modify semi-automatic assault rifles into fully automatic machine guns."
- One customer "shot and killed a federal guard."
- Another customer "believed he was supplying international terrorists" with the products.

6

- The defendant stated in a recording on an electronic device seized during the investigation that certain "people need to [f***ing] die" and that "before COVID-19 ends, the world might call me a crazed gun man."

- A journal kept by the defendant's live-in girlfriend quoted the defendant as stating he was going to "kill 'em," "blow up the building," and/or "deface federal property."

- The same journal included a question the girlfriend wrote, "What happened to the Tim I used to know and what Tim will I get today."

- The defendant told his girlfriend that, if anyone came to his door for arrest or search warrant [meaning law enforcement], "it would not be pretty."

- At the time of the defendant's arrest, "he had a loaded gun, three loaded magazines with hollow point bullets, and a knife on his person."

- A search of the defendant's residence "revealed two loaded hand guns on his nightstand, a loaded rifle beside his bed, and another rifle fitted with a silencer in his bedroom."

- At the time of the defendant's arrest, he "asserted that he was being kidnapped and continued to assert the same in recorded phone calls to his parents from the jail."

- Following the defendant's arrest, he "asked his parents to get in touch with his girlfriend because he needed to marry her immediately."

- The defendant's "actions and behaviors" are indicative of someone who "attempts to circumvent rules/laws[.]"

1. **Dr. Boyd's Report**

As an initial matter, the government notes that Dr. Boyd's ultimate opinion is that the defendant presents a "relatively low risk of violent re-offense." However, the government

7

believes that "violent re-offense" is a narrower concept than the danger to the community element of the Bail Reform Act. In other words, the defendant can (and does) present a danger to the community that may not rise to the level of a new a criminal offense.

Moreover, with all due respect to Dr. Boyd and her qualifications, the government has concerns that Dr. Boyd reviewed pertinent cases documents, including the Criminal Complaint, the transcript of the detention hearing, and this Court's Detention Order, but still opines that the defendant presents a "relatively low risk of violent re-offense." The concern is based in the fact that Dr. Boyd appears to place more than appropriate reliance on the subjective risk assessment she conducted of a defendant who is aware that he faces years in federal prison, as compared to the objective evidence that existed prior to the defendant becoming aware that he was under federal investigation or prosecution. In any event, Dr. Boyd's report should not receive any more weight than the other items of evidence, which this Court has already relied on to detain the defendant. On balance, Dr. Boyd's report should not cause this Court to reconsider its detention determination.

2. **Emily Cross's "Clarification"**

That Emily Cross would purportedly testify that she does not believe the defendant is a violent person is not a "clarification" or a "contradiction" of the government's evidence. At the outset, any "new" information from Emily Cross should be considered in the context of the defendant's clear intent to be obstructive when he suggested to his parents that he and Emily should marry "immediately." In any event, the proffered testimony does not change what she wrote in her diary prior to any knowledge of a federal investigation or prosecution. The proffered testimony does not change her report to law enforcement regarding the defendant's "it would not be pretty" statement. Significantly, the defendant does not proffer that Emily Cross is prepared

to retract those statements. Accordingly, the proffered testimony of Emily Cross does not warrant a reconsideration of this Court's detention determination.

3. **Character Reference from Two Additional Friends**

That the defendant now has two additional friends who are willing to vouch for his alleged non-violent character does not warrant reconsideration either. First, the Court already had an affidavit from one friend at the time of its decision. Second, the proffered testimony of these two additional friends does not, on balance with the other evidence, alleviate the government's concern, or the one already articulated by the Court, for the safety of the community.

4. **Conditions at the Eastern Regional Jail relating to COVID-19**

Conditions at the Eastern Regional Jail relating to COVID-19 do not bear on this Court's determination that the defendant presents danger to the community that conditions of release cannot alleviate. Accordingly, for this reason alone, this line of argument should be rejected as a basis for reconsideration. Moreover, while there was an outbreak of COVID-19 at the Eastern Regional Jail in December 2020, there is only one active case at the jail with 279 inmates recovered as of January 25, 2021 at 3:00 p.m. See WV DHHR Website, https://dhhr.wv.gov/COVID-19/Pages/Correctional-Facilities.aspx, Jan. 25, 2021. Finally, the complex case schedule, with a trial date in April 2021, should alleviate any temporary inconvenience that COVID-19 caused to the preparation of his defense. If not, then a motion to continue is the appropriate recourse, not the release of the defendant, whom this Court has already found, for numerous reasons, is "not a good candidate for release."

## V. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny the defendant's motion without the need for a hearing.

                Respectfully submitted,

                WILLIAM J. POWELL
                UNITED STATES ATTORNEY


By:    <u>/s/ Jarod J. Douglas</u>
        Jarod J. Douglas
        Assistant U. S. Attorney

## CERTIFICATE OF SERVICE

I, Jarod J. Douglas, Assistant United States Attorney for the Northern District of West Virginia, hereby certify that on the 26th day of January 2021, the foregoing UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF DETENTION ORDER was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Shawn McDermott, Esq.
Mills McDermott Criminal Law Center
1800 West King Street
Martinsburg, WV 25401
*Counsel for Defendant*

WILLIAM J. POWELL
UNITED STATES ATTORNEY

By:  /s/Jarod J. Douglas
Jarod J. Douglas
Assistant U. S. Attorney